IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

UNITED STATES OF AMERICA :   CASE NO. 1:24-CR-00096
                          :
      v.                  :
                          :
DURANTE KING-McLEAN       :


TRANSCRIPT OF PROCEEDINGS
IN RE: CHANGE OF PLEA

BEFORE THE HONORABLE JENNIFER P. WILSON
UNITED STATES DISTRICT COURT JUDGE
MAY 14, 2025; 10:00 A.M.
HARRISBURG, PENNSYLVANIA


APPEARANCES:

WILLIAM A. BEHE, ESQUIRE
U.S. Attorney's Office
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
    For the United States

JESSICA L. BUSH, ESQUIRE
Dethlefs, Pykosh and Murphy
2132 Market Street
Camp Hill, PA  17011
    For the Defendant


Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.
_____
Amy R. Fritz, R.P.R.
Official Court Reporter
amy_fritz@pamd.uscourts.gov

# P R O C E E D I N G S

THE COURT:  We are here today in the case of *United States versus Durante King-McLean* at this court's number 1:24-CR-96.  This is a date set for a guilty plea hearing for Mr. King-McLean, and the United States is represented in this matter by Assistant United States Attorney Bill Behe. Mr. King-McLean is here with his counsel, Jessica Bush, Esquire, and we are prepared to proceed.

So, Mr. King-McLean, before I can accept a plea of guilty, I have to establish for the record that you understand your rights and the consequences of a guilty plea and that you are voluntarily pleading guilty.

I am going to ask you some questions this morning. Because you're going to be under oath in just a moment, you must answer me truthfully.  If you do not, you could be subject to further prosecution for perjury or making false statements, and your statements can be used against you.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If at any time you don't hear me or if you don't understand one of my questions, you should let me know; I'm always happy to repeat or rephrase.  However, if you go ahead and answer my questions, I will assume that you heard and understood me.  Agreed?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You can confer with Ms. Bush, if you need to; so if you need that opportunity, just let me know and I'll give you as much time as you need.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  We will now administer an oath.

(Defendant sworn.)

THE COURT:  All right.  And, sir, I'm going to ask you to keep your voice up a little bit so I can make sure that the Court Reporter doesn't miss anything that you say.

All right.  We'll start with some basic background information.  Can you please let me know your full name.

THE DEFENDANT:  Durante King-McLean.

THE COURT:  And are you able to read, write, and speak English?

THE DEFENDANT:  Yes.

THE COURT:  How old are you?

THE DEFENDANT:  I'm 26.

THE COURT:  Did you graduate from high school?

THE DEFENDANT:  Yes.

THE COURT:  Do you have education beyond your high school degree?

THE DEFENDANT:  I went to college for a little bit, but I ended up leaving.

THE COURT:  All right.  So some college credits but no degree?

THE DEFENDANT:  Yes.

THE COURT:  All right.  And then the next couple of questions I ask of every defendant, no offense is intended; it is necessary for me to ask these questions to be sure that you're competent to enter a plea.  Have you ever had treatment for substance abuse?

THE DEFENDANT:  No.

THE COURT:  Have you had any alcohol or drugs not prescribed for you today or yesterday?

THE DEFENDANT:  No.

THE COURT:  Have you ever been treated for a mental health concern?

THE DEFENDANT:  No.

THE COURT:  Are you currently taking any prescription medication that would interfere with your ability to understand or answer my questions?

THE DEFENDANT:  No.

THE COURT:  Are you feeling all right today under the circumstances?

THE DEFENDANT:  Yeah, I'm feeling all right.

THE COURT:  And do you understand what's happening here today?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Based on Mr. King-McLean's answers to my questions, I have no concern regarding his

competence, and we will proceed.

I noted a moment ago you are represented by Attorney Bush.  Are you satisfied with the representation you have received from your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has she answered all of your questions regarding the charges in this case to your understanding?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So you do have a constitutional right to a jury trial on the charges in this case.  You also have a right to be represented by counsel in all proceedings before this court, including the selection of 12 people to sit on a jury.

You are presumed innocent until proven guilty. To prove you guilty, it is the Government's burden to prove each element of each charge against you beyond a reasonable doubt.  The jury must unanimously find you guilty, which means all 12 jurors must agree.  At a trial, you would be able to present evidence, subpoena witnesses, and cross-examine the witnesses called by the Government.

You would also be able to testify yourself. However, you're not required to testify and, if you chose not to, that fact could not be held against you. You would also be able to file pretrial motions such as a motion to suppress the Government's evidence.  Do you

understand your right to a trial by jury?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you plead guilty today, you give up this right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you also understand that if you plead guilty today, you will not then be able to raise any defenses to the charges against you, present evidence, file pretrial motions or testify on your own behalf?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that you still have the right to maintain your current plea, which is not guilty, and proceed to trial?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And has your attorney explained the consequences of a guilty plea to Count 1 of the indictment?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So then with all of this in mind, do you want to plead guilty to Count 1 of the indictment and give up your right to a jury trial?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  There is a written plea agreement in this case; we are going to discuss it.  Do you have a copy of that in front of you?

THE DEFENDANT:  Yes.

THE COURT:  Did you go over the entire plea agreement with Attorney Bush?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So I'm going to ask you to turn to the second to last page, it's Page 34.  Just let know when you're there.

THE DEFENDANT:  I'm there.

THE COURT:  All right.  Is that your signature above your typed name?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And then above your signature it says, I have read this agreement and carefully reviewed every part of it with my attorney; I fully understand it and I voluntarily agree to it.  Is that statement accurate?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And did you voluntarily sign this plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Ms. Bush, is that your signature on Page 34, and is your acknowledgement accurate as well?

MS. BUSH:  Yes, Your Honor.

THE COURT:  All right.  Mr. Behe, would you please summarize the key terms of this plea agreement for us.

MR. BEHE:  Yes, Your Honor.  The plea agreement

calls for Mr. Durante King-McLean to plead guilty to Count 1 of the indictment, which charges conspiracy to traffic in firearms in violation of Title 18 of the United States Code, Section 933, Subsection (a)(1) and (3).

The maximum sentence upon conviction is 15 years' imprisonment, a maximum fine of $250,000, a $100 assessment, and a maximum term of supervised release of three years as well as the cost of prosecution and the denial of certain federal benefits.

The United States has agreed to move for the dismissal of all remaining counts at or before the Defendant is sentenced in this matter.  The United States has agreed that we would recommend that the Defendant receive either a two- or a three-level reduction for acceptance of responsibility, and the plea agreement does advise him that this is just a recommendation and does not bind the Court.

In the plea agreement, the Defendant agrees to waive his right to challenge the venue in the Middle District of Pennsylvania.  The plea agreement provides that the United States can give the Court and Probation all information it has relevant to the application of the sentencing guidelines and that the United States can recommend any sentence up to the maximums that I have just described.

The Defendant has consented to the destruction of

any items that were seized during the course of the investigation with or without the entry of a destruction order, and he consents to the entry of an order of forfeiture of all of the firearms that were seized in this case and identified in the indictment.

The plea agreement advises the Defendant and he agrees that the Court can consider all information including conduct that was the subject of dismissed charges.  He also agrees that he cannot withdraw his guilty plea if he's dissatisfied with the sentence that the Court imposes.

He also understands that the Court is not bound by the agreement and is free to impose any lawful sentence. The plea agreement advises that deportation is a possible consequence if the Defendant is not a United States citizen, and I would note that the Defendant has crossed out or effectively deleted Paragraph 28 and all subparts to that paragraph that would have applied if he had agreed to deportation.

The plea agreement also provides that the Defendant waives his right to a direct and collateral appeal, and it also acknowledges that he is satisfied with the assistance of counsel.  I believe that to be an accurate summary of the key terms of the plea agreement.

THE COURT:  All right.  Thank you, Mr. Behe.

Ms. Bush, do you agree that is an accurate summary

of the key terms of the plea agreement?

MS. BUSH:  Yes, Your Honor.

THE COURT:  All right.  And, Mr. King-McLean, other than what we've discussed so far today, did anyone promise or offer you anything else to get you to plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have there been any threats or force or violence against you, any member of your family, or any other person that caused you to sign the plea agreement or plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you entering into this guilty plea of your own free will?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  We will spend the next several minutes talking about the consequences of a guilty plea, and I'll start with a question, are you a United States citizen?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Then in addition to the possible penalties, which I will advise you of in just a moment, because you are not a United States citizen, you will face a risk of deportation from the United States after you serve any sentence imposed by this court.  Knowing this risk of deportation, do you still wish to enter a guilty plea regardless of any immigration consequences?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And I did take note, as Mr. Behe indicated, you have removed, effectively removed the entirety of Paragraph 28 to the plea agreement, so that's confirmed on the record both by Mr. Behe and myself.

Do you understand, Mr. King-McLean, that the terms of the plea agreement are only recommendations to me and ultimately I will decide your sentence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that your guilty plea is still binding on you no matter what sentence I impose even if it's different from the recommendations in the plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that for the count that you intend to plead guilty to, I can sentence you up to the maximum sentence allowed by law?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  The total maximum possible penalties for Count 1 is the combination of all the penalties, and that is up to 15 years in prison, a fine of up to $250,000, a term of supervised release of up to three years, the cost of prosecution, denial of certain federal benefits as well as a special assessment of $100.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that the Court does have the authority to order restitution, if applicable, in an amount I find to be fair and just?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that as a result of your plea, you will be required to forfeit the property that's described as all firearms seized in your plea agreement at Paragraph 15 and you've agreed in advance to relinquish any claim, title, or interest that you may have in that property?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand there is no parole under the federal system and, therefore, you must serve the entire term of any imprisonment to which you are sentenced?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that a term of supervised release is served after a term of imprisonment?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And then do you also understand that if you would violate the terms of supervised release, you could be required to return to prison?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  There are federal sentencing guidelines that the Court must consider in determining your sentence.

The guidelines provide me with an advisory sentencing range based on the offense to which you're pleading guilty and your criminal history, if any.

So, Ms. Bush, have you discussed the advisory guidelines with your client?

MS. BUSH:  Yes, Your Honor.

THE COURT:  And, Mr. King-McLean, can you confirm that you had enough time to discuss those advisory guidelines with Ms. Bush before entering a guilty plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  After you plead guilty, a probation officer will then prepare a presentence report which will determine your sentencing guidelines range.  You have a right to object to any part of the presentence report including the probation officer's calculation of your guidelines range.  The Government can also object.

If any objections are made to the presentence report, I will then rule on them and then I will calculate your final guidelines range.  It's important to understand that my final calculation may or may not be the same as the range estimated for you by Ms. Bush.

Your guilty plea will still be binding on you even if I do not rule favorably on your objections and even if you disagree with my final calculation of your guidelines range.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You also have to understand that the sentencing guidelines are advisory only and that means the Court has the authority to impose a sentence that could be above or below your sentencing guidelines range.  Do you understand that as well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You may not withdraw your guilty plea because I impose a sentence that is above or below your guidelines range.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Before or during sentencing, your attorney and the Government's attorney can make motions, agree to facts, and ask that I impose a particular sentence. I'm not obligated to do what they ask.

Do you understand that your guilty plea is still binding on you even if I do not impose the sentence that your attorney or the Government's attorney requests?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You are pleading guilty today to a felony offense and, as a result, you may lose access to valuable civil rights such as the right to vote, hold public office, serve on a jury, possess a firearm, or hold a professional license.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that as a consequence of your guilty plea, you will be required to submit a DNA sample?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  There is one final aspect of your plea agreement I'd like to review, and that is your appeal waiver.  Can you please turn to Page 28 where you'll find Paragraph 29.  All right.  And do you see Paragraph 29 that's called Appeal Waiver Direct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  This is the appeal waiver paragraph. Did you carefully review this with Ms. Bush?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you have any questions for me or Ms. Bush about what it means to waive your right to a direct appeal?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Turn the page for me and take a look on Page 29, Paragraph 30.  This is labeled Collateral Appeal Waiver.  Same question; did you carefully review this paragraph with Ms. Bush?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you have any questions about what it means to waive your right to a collateral appeal?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Then you can set aside your plea agreement; I don't have any remaining questions about that document.  And, Mr. King-McLean, with all of the information we've reviewed so far this morning, is it still your desire to enter a guilty plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So then you are pleading guilty to Count 1 of the indictment.  In Count 1, you are charged with conspiracy to traffic in firearms, a violation of 18 U.S.C., Section 933(a)(1), (a)(3) and (b).  If this charge were to go to trial, it would be the Government's burden to prove each element of the charge beyond a reasonable doubt.

These are the elements of the charge:  That you knowingly conspired with others to ship, transport, transfer, or cause to be transported and otherwise disposed of one or more firearms to another person in and affecting interstate and foreign commerce, knowing and having reasonable cause to believe that the use, carrying, and possession of a firearm by that other person, the recipient, would constitute a felony as defined by 18 U.S.C., Section 932(a).

In just a moment, I will invite Mr. Behe to state for the record the facts that the Government is prepared to prove in support of this charge.  I would caution you to listen very carefully to Mr. Behe because when he finishes,

I'll ask if you admit to these facts.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Mr. Behe.

MR. BEHE:  Your Honor, the evidence would establish that on September 2nd of 2023, the Defendant was stopped in Franklin County by the Pennsylvania State Police for motor vehicle violations involving excessive window tint and for crossing the fog line several times.

During the course of the stop, the Defendant, who was the lone occupant of the rental vehicle, fled on foot and was captured by police after a brief foot chase.  During a subsequent search of the rental vehicle the Defendant was operating, the Pennsylvania State Police located and seized 65 firearms from the trunk.

Of the 65 firearms that were recovered, 2 were fully automatic, 11 were stolen, and 1 had an obliterated serial number.  And by firearms, I'm referring to handguns. Each of the firearms were individually wrapped inside of socks.  These 65 firearms are individually identified in Count 2 of the indictment.

The investigation that followed established that the Defendant and others conspired to have the Defendant illegally enter the United States from Canada to illegally purchase firearms and then illegally export and traffic them from the United States into Canada.  Investigating agents on

the state and federal level determined that on April 23rd of 2023, the Defendant and Co-defendant Paramalingam and others known to the United States discussed arrangement for the Defendant's illegal entry into the United States to illegally secure and transport firearms back to Canada.

On April 24th, 2023, Mr. Paramalingam discussed with the Defendant in a Threema chat flight information and plans to meet with the Defendant in the United States. Threema is a paid cross platform encrypted instant messaging application that was developed in Switzerland.

The investigation then went on to show that on May 22nd of 2023, in a Threema chat, Mr. Paramalingam wrote that he was going to leave Portugal early to get cash for the Defendant. The next day, May 23rd of 2023, Mr. Paramalingam sent the Defendant a photograph of large amounts of Canadian currency wrapped together in multiple rubber bands. Mr. Paramalingam wrote, quote, just picked up the change for you, going to exchange the change to USD; that would stand for United States Dollars.

The following day, May 24th, 2023, Mr. Paramalingam and another person known to the United States flew from Toronto, Ontario to New York City, New York to deliver the money to the Defendant. On May 25th of 2023, in a Threema chat between Mr. Paramalingam and the Defendant, Mr. Paramalingam, going by the moniker Stunner, wrote that,

quote, the funds are here, closed quote.  On May 29th of 2023, Mr. Paramalingam flew back to Toronto, Ontario via the Miami International Airport.  On June 17 of 2023, utilizing Instagram, the Defendant and Mr. Paramalingam, who was using the moniker, sristar16, discussed the rental of an Airbnb for the Defendant.  The Airbnb being discussed was located in Fort Lauderdale, Florida.

While the Defendant stayed at the Airbnb, he and Mr. Paramalingam and others known to the United States communicated routinely via social media regarding facilitating the Defendant's stay at the Airbnb.

On July 13, 2023, utilizing Instagram, Mr. Paramalingam wrote to the Defendant and stated that he has, quote, change, closed quote, for him and that a person will bring the Defendant the money.

On August 8th of 2023, utilizing Threema, Mr. Paramalingam and the Defendant discussed the purchase of several firearms for, quote, 3500.  That's 3-5-0-0, closed quote.  Mr. Paramalingam then communicated, quote, get it, good to go gtg, closed quote.

Throughout the month of August of 2023, the Defendant took multiple photographs of firearms and large amounts of United States currency utilizing his cell phone. On or about August 28, 2023, in a text message conversation with Co-defendant Jalisa Edwards, also known as Lisa, the

Defendant talked about acquiring, quote, 45 sticks, closed quote, that month, which the United States believes was code for firearms.  Ms. Edwards expressed concerns to the Defendant before he left Florida in a rental vehicle about him, quote, getting pulled, closed quote.

On August 28th, 2023, the Defendant left Florida in a rental vehicle, the one that he was eventually stopped in on September 2nd of 2023 in Franklin County, and he traveled north.  The Defendant stopped for a few days in Atlanta, Georgia where he met with a person known to the United States who, on August 15th of 2023, rented a unit at a U-Haul storage facility located in Atlanta, Georgia.

On August 30th and 31st of 2023, the Defendant visited the U-Haul facility in Atlanta, Georgia. Surveillance footage from the storage facility shows the Defendant with a backpack in his left hand.  The backpack was later recovered from the trunk of the Defendant's rental vehicle on September 2nd, 2023, when he was stopped by the Pennsylvania State Police, and that contained over 30 firearms.

I believe that evidence would show -- I should say at the time, there was a nationwide ban in Canada on the possession, sale, ownership, or transfer of handguns and so whoever would have received these guns where they're transferred into Canada would have been in possession of

them illegally.  So I believe this evidence would establish that there was a conspiracy between the Defendant, Mr. Paramalingam, and other individuals to traffic in firearms.

THE COURT:  Into Canada.

MR. BEHE:  Into Canada, yes.

THE COURT:  All right.  Mr. King-McLean, do you fully admit to the facts that were just described by Mr. Behe?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And based on all of the information I've provided to you today, do you now plead guilty to Count 1 of the indictment?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The Court makes the following findings: The Defendant is fully alert, competent, and capable of entering an informed plea.  The Defendant is aware of and understands the consequences of pleading guilty.  The Defendant's plea is knowing and voluntary, and the plea is supported by an independent basis in fact demonstrating each of the elements of the charged offense.

The Defendant's plea of guilty is accepted and he is now adjudged guilty of the offense.  There was a written motion to withdraw the former plea of not guilty; that's signed by the Defendant and his counsel.  I've granted that motion.  There's also a written plea of guilty to Count 1 of

the indictment signed by Mr. King-McLean and his counsel; we'll make that part of the record. I will order that a presentence report be prepared by the probation office; the deadline will be July 9, 2025. I will hold a presentence conference with counsel only by phone on October 10, 2025, and that will be at 9:15 a.m.

At that time, Mr. King-McLean, I'll address with Counsel whether there are any objections that need to be resolved. We'll also select an appropriate date and time for your sentencing hearing. Mr. King-McLean is currently detained, and he will remain detained pending sentencing.

Is there anything else to address on behalf of the United States?

MR. BEHE: No, Your Honor. Thank you.

THE COURT: Ms. Bush, anything else to address on behalf of Mr. King-McLean?

MS. BUSH: No, Your Honor.

THE COURT: All right. Court is in recess until 11:00.

COURTROOM DEPUTY: Please rise.

(The proceedings concluded at 10:32 a.m.)

CERTIFICATION


I, Amy R. Fritz, Federal Official Court Reporter, in and for the United States District Court for the Middle District of Pennsylvania, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


/s/ Amy R. Fritz
Amy R. Fritz, R.P.R.
U.S. Official Court Reporter
Amy_Fritz@pamd.uscourts.gov